UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALYCIA DUKES                                                      PLAINTIFF

v.                                                        NO. 3:16-cv-00303-CRS

MID-EASTERN ATHLETIC
CONFERENCE

And

DWIGHT BARBEE                                                     DEFENDANTS

<u>Memorandum Opinion</u>

I.      <u>Introduction</u>

This matter is before the Court on Defendant Dwight Barbee's motion to dismiss the

claims against him under Federal Rule of Civil Procedure 12(b)(2) and, in the alternative, motion

for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Plaintiff Alycia

Dukes filed a response in opposition, to which Barbee replied. For the reasons set forth below,

the Court will grant the motion to dismiss the claims against Barbee for lack of personal

jurisdiction. The Court will grant the motion for judgment on the pleadings on the claims for

invasion of privacy (Count II) and negligence per se (Count IV).

II.     <u>Allegations in the Complaint</u>

Defendant Mid-Eastern Athletic Conference (MEAC) hired Defendant Dwight Barbee as

its Coordinator of Basketball Officials, a position that he held until he resigned in August 2015.

Compl. ¶ 12, ECF No. 1-1. As Coordinator of Basketball Officials, Barbee performed several

tasks for the MEAC, including assigning officials to the men's and women's basketball games in

the conference, determining who could officiate for the conference and the conference

1

tournament, and controlling how many games each official could officiate. *Id*. The complaint also states that Barbee "transacted business" with Plaintiff Alycia Dukes for his own benefit and the benefit of the MEAC. *Id*. ¶ 4.

Dukes allegedly began officiating MEAC women's basketball games on 2005. *Id*. ¶ 9. After she began working for the MEAC, she says she "repeatedly suffered unwelcome sexual advances" from Barbee. *Id*. ¶ 16. In "nearly every encounter with her," he said something related to sex. *Id*. ¶ 17. He "commented on her appearance, ogled her[,] or propositioned her." *Id*. ¶ 19. Dukes also claims that in March 2015, Barbee texted her and told her that she had "sexy legs." *Id*. ¶ 18. Also in 2015, Barbee allegedly requested that she drive him to and share a hotel for a basketball game that she had been assigned to officiate and that he had been assigned to observe. *Id*. ¶ 20. He became upset when she reserved separate hotel rooms for them and was overly critical of her officiating performance at the game. *Id*. The complaint also states that in April 2015, Barbee offered to pay Dukes $999.00 to have sex with him six times a year. *Id*. at ¶ 22. After Barbee's offer to pay Dukes for sexual encounters, she says that she declined further officiating assignments with the MEAC because she did not feel comfortable working with Barbee. *Id*. ¶ 23. She also claims that she suffered "severe emotional distress." *Id*. ¶ 24.

According to the complaint, other female officials complained that Barbee sexually harassed them and sexually discriminated against them. *Id*. ¶ 25. The MEAC reportedly did not provide a policy prohibiting sexual harassment, training on sexual harassment, or a procedure allowing people to complain of sexual harassment. *Id*. ¶ 15.

Dukes filed this action against the MEAC and Barbee in the Jefferson County, Kentucky Circuit Court. She asserts that the MEAC negligently supervised Barbee (Count I), that Barbee invaded her privacy (Count II), that Barbee engaged in intentional infliction of emotional distress

2

(Count III), and that Barbee was negligent per se under an unspecified "Kentucky law or statute" (Count IV). She requests lost wages and benefits, compensatory damages, and punitive damages. Barbee filed an answer. Barbee filed an answer. The MEAC, with Barbee's consent, removed the action to this Court based on diversity jurisdiction. Barbee then filed a motion to dismiss the allegations against him under Federal Rule of Civil Procedure 12(b)(2) and a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

III.    Motion to Dismiss for Lack of Personal Jurisdiction

Barbee argues that the claims alleged against him should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Barbee's Mem. Supp. Mot. Dismiss 21, ECF No. 6-1. To determine whether there is personal jurisdiction over the defendant, "federal courts sitting in diversity apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). When a state's long-arm statute reaches the limits of the Due Process Clause, "the two inquiries merge and the court 'need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process.'" *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998) (citing *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996)). Because Kentucky's long-arm statute extends as far as the Due Process Clause, the Court need only examine this single inquiry. *Id*.

The Due Process Clause permits the court to exercise general or specific jurisdiction, depending on the type of contacts that the defendant has with the forum state. *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). In reviewing a motion to dismiss a complaint for lack of personal jurisdiction, the court must "consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

Having done so, the Court finds that it lacks personal jurisdiction over Barbee and thus will dismiss the claims against him without prejudice under Federal Rule of Civil Procedure 12(b)(2).

IIIA.   General Jurisdiction

Barbee maintains that this Court does not have general jurisdiction over him. Barbee's Mem. Supp. Mot. Dismiss 7–8, ECF No. 6-1. General jurisdiction requires that the "defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Bird*, 289 F.3d at 873. Operating an office in the forum state, having a license to do business from the forum state, owning a bank account in the forum state, and directing business operations from the forum state may be enough to establish a continuous and systematic presence in the forum state that would give rise to general jurisdiction. *See id*. at 873–74. Maintaining a website that is accessible in the forum state is not enough to justify jurisdiction. *See id*. at 784.

Here, the complaint does not allege facts that would show that Barbee had continuous and systematic contacts with Kentucky. Dukes makes the conclusory statement that "Barbee has, for himself and for the benefit of the MEAC, transacted business with [her] within the geographic boundaries of Jefferson County in the Commonwealth of Kentucky." Compl. ¶ 4, ECF No. 1-1. She provides no factual allegations that would support this statement. Even taken as true and in the light most favorable to Dukes, the assertion that Barbee transacted business in Jefferson County does not permit the interference that Barbee had systematic and continuous contacts with Kentucky. Therefore, the Court lacks general jurisdiction over Barbee.

IIIB.   Specific Jurisdiction

Barbee also argues that the Court does not have specific jurisdiction over him. Barbee's Mem. Supp. Mot. Dismiss 9, ECF No. 6-1. Specific jurisdiction arises when the claims "arise out of or relate to" a defendant's contacts with the forum. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984). There are three requirements for a court to exercise specific jurisdiction over a defendant. *Aristech Chem. Int'l*, 138 F.3d at 628. First, the defendant must have purposely availed himself of the forum state or purposely caused a consequence there. *See id*. Second, the claims must have arisen from the defendant's actions in the forum state. *See id*. Third, exercising jurisdiction over the defendant must be reasonable. *See id*.

The first requirement—a showing that the defendant purposely availed himself of the privilege of acting in the forum state—is essential for the court to exercise specific personal jurisdiction over the defendant. *Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989). It ensures that "the defendant is not into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The United States Court of Appeals for the Sixth Circuit has held that "phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). If the content of the communications in the forum initiates "an intentional tort action, that alone may constitute purposeful availment." *Id*.

For example, in *Neal*, the plaintiffs were residents of Tennessee who owned a dressage horse that they wished to sell. *Id*. at 330. They met with the defendant in Florida and arranged for him to serve as their agent to sell the horse. *Id*. The defendant called and faxed the plaintiffs in Tennessee about offers made to purchase the horse. *Id*. The plaintiffs sold the horse for a value

that was lower than they had anticipated. *Id*. They later learned that the defendant had retained, without their knowledge, a large portion of the purchase price. *Id*. The plaintiffs sued the defendant in the United States District Court for the Middle District of Tennessee for fraud and breach of fiduciary duty. *Id*. On appeal, the defendant argued that the district court did not have personal jurisdiction over him because his contacts with the forum were insufficient. *Id*. at 331. The Sixth Circuit explained that the defendant purposefully availed himself of the privilege of acting in Tennessee. The defendant's fraudulent phone calls and faxes were directed at the plaintiffs in Tennessee and had foreseeable effects in the state. *Id*. The communications that were sent to the plaintiffs in Tennessee were at the "heart of the lawsuit." *Id*. They were not mere "incidental communications" sent into the forum state. *Id*.

In this case, Dukes alleges that Barbee "transacted business" with Dukes in Jefferson County, Kentucky. Compl. ¶¶ 4, 5, ECF No. 1-1. She also asserts that Barbee resides in High Point, North Carolina. *Id*. ¶ 4. She does not allege that Barbee visited Kentucky or otherwise had physical contact with the state. Taking the complaint in the light most favorable to Dukes, it can be inferred that Barbee was never physically present in Kentucky, a fact that Dukes admits in her response. *See* Dukes' Resp. Mot. Dismiss 17. Thus, for Dukes to establish that the Court has specific jurisdiction over Barbee, the complaint must allege that he availed himself of the privilege of acting in Kentucky through electronic means and, consistent with *Neal*, 270 F.3d at 332, that the electronic communications sent to Kentucky form the basis of her claims.

It does not. The complaint does not state that Dukes received the text messages at issue while she was in Kentucky. Nor does the complaint state that Barbee had reason to believe that Dukes would receive the text messages while she was in Kentucky. Communications sent to cell

phones—unlike communications sent to fax machines and landline phones—can be received anywhere. Therefore, the Court cannot exercise specific jurisdiction over Barbee.

IV.   Judgment on the Pleadings

Barbee alternatively moves for a judgment on the pleadings for the three claims alleged against him: invasion of privacy, negligence per se, and intentional infliction of emotional distress. Barbee's Mem. Supp. Mot. Dismiss 19, ECF No. 6-1. A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations omitted). The court must take all "well-pleaded material allegations of the pleadings of the opposing party" as true. *Id*. The court, however, is not required to accept "legal conclusions or unwarranted factual inferences." *Id*. at 582–83. The motion for judgment on the pleadings is granted when "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id*. at 583.

The Court finds that judgment on the pleadings for Dukes' claims for invasion of privacy and negligence per se is appropriate and provides additional grounds for dismissal for these claims against Barbee. The Court does not, however, find that judgment on the pleadings for Dukes' claim for intentional infliction of emotional distress is appropriate at this time.[1]

IVA.   Invasion of Privacy

Dukes asserts that Barbee committed the tort of invasion of privacy because his behavior "constitute[d] [an] intrusion into [her] seclusion." Compl. ¶¶ 28–34, ECF No. 1. Barbee initially argues that because Dukes' claim for invasion of privacy is based on oral statements, it

---

[1] The Court examined the viability of Dukes' claims against Barbee in its memorandum opinion regarding the MEAC's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). These findings are consistent with that discussion.

necessarily fails under Kentucky law. Barbee's Mem. Supp. Mot. Dismiss 21, ECF No. 6-1. In 1927, the Kentucky Court of Appeals determined that the right of privacy does not extend to statements that are made orally. *Brents v. Morgan*, 299 S.W. 967, 970 (Ky. 1927). Thus, to the extent that Dukes' claim for invasion of privacy is based on oral statements, judgment on the pleadings is appropriate.

To the extent that the remainder of Dukes' claim for intrusion into her seclusion is based on text messages, Barbee contends that it fails because the factual allegations do not establish that he engaged in an intrusion or that Barbee intruded upon a matter to which Dukes had a reasonable expectation of privacy. Barbee's Mem. Supp. Mot. Dismiss 21–22, ECF No. 6-1. There are four theories under which a plaintiff may recover for invasion of privacy under Kentucky law: (1) intrusion upon another person's seclusion, (2) appropriation of another person's name or likeness, (3) unreasonable publicity into another person's private life, and (4) publicity that places another person in false light. *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981) (citing Restatement (Second) of Torts §652A (1977)). The Kentucky Supreme Court has not yet explained the elements required to prove a claim of invasion of privacy based on intrusion upon another person's seclusion. *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 821 (W.D. Ky. 2003). The Western District of Kentucky predicted that the state's highest court would require a plaintiff to show "(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person." *Id*. at 822.

A plaintiff cannot show that the defendant intruded into his or her private affairs for events that occurred while he or she appeared in public and expected to interact with others. *See Cheatham v. Paisano Publications*, 891 F. Supp. 381, 385 (W.D. Ky. 1995). In *Cheatham*, the

8

plaintiff went to a bikers' festival. *Id*. at 384. She wore a pair of blue jeans from which she had cut out the backside, replacing it with fishnet fabric. *Id*. One of the defendants, a magazine, published a photograph taken of the plaintiff's backside while she was at the festival. *Id*. at 384. The other defendant, a t-shirt manufacturer, then sold t-shirts with a similar likeness. *Id*. The plaintiff sued the defendants for, among other claims, invasion of privacy based on intrusion into her seclusion. *Id*. The court explained that because the plaintiff wore her unusual blue jean design at a large public event, she could have expected that people would photograph her. *Id*. at 385. Thus, "no reasonable jury could possibly conclude that [the magazine's] taking of these photos was an unreasonable intrusion upon her seclusion." *Id*.

Here, the complaint does not provide factual allegations that indicate that Barbee intruded upon Dukes' seclusion by sending her text messages. Dukes asserts that Barbee sent her two explicit text messages, including one in which he offered to pay her for sex. Compl. ¶¶ 18, 19, 22, ECF No. 1-1. From these allegations, it cannot be inferred that Barbee communicated with Dukes in a way that intentionally invaded her seclusion. It is not alleged that Dukes kept her phone number secret nor that Barbee purloined her phone number. Like the plaintiff in *Cheatham* who could expect to have her photograph taken while at a bikers' festival, Dukes thus could have expected at least the possibility that Barbee would use her phone number to send her text messages. Therefore, even if the content of the messages was distasteful, Barbee's sending the text messages did not intrude upon Dukes' seclusion.

IVB.   Negligence Per Se

Dukes claims that Barbee committed the tort of negligence per se because his actions "violated Kentucky law or statute." Compl. ¶¶ 40–43, ECF No. 1. Barbee argues that the

complaint does not state a viable negligence per se claim because it fails to identify the specific law that Barbee is alleged to have violated. Barbee's Mem. Supp. Mot. Dismiss 27, ECF No. 6-1.

Under Kentucky's negligence per se statute, a person who is "injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation." KRS § 446.070. To maintain a negligence per se claim, a plaintiff must show that (1) he is within the class of persons the statute is intended to protect and (2) the statute is "penal in nature and provides no civil remedy." *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005).

Dukes fails to state a claim for relief for negligence per se. The complaint does not identify any Kentucky statute or law that Barbee allegedly violated. The complaint also fails to show that Dukes is within the class of persons the unnamed Kentucky statute would be designed to protect. It is silent on the questions of whether the statute would be penal in nature and whether the statute would provide for a civil remedy. Dukes identifies such a statute, Kentucky Revised Statute § 529.040, but only in her response. Dukes' Resp. Mot. Dismiss 23, ECF No. 10. The inclusion of this statute in her response, however, does not remedy the deficiencies in her complaint regarding her negligence per se claim, and Barbee is entitled to judgment on the pleadings on this claim.

IVC.    Intentional Infliction of Emotional Distress

Finally, Dukes claims that Barbee committed the tort of intentional infliction of emotional distress. Compl. ¶¶ 35–39, ECF No. 1-1. Barbee argues that judgment should be granted on this claim because the factual allegations in the complaint do not support a finding that Barbee's conduct was outrageous or that Dukes suffered severe emotional distress. Barbee's Mem. Supp. Mot. Dismiss 24–26, ECF No. 6-1.

The Kentucky Supreme Court first recognized the tort of intentional infliction of emotional distress in *Craft v. Rice*, *Ky.* 671 S.W.2d 247, 251 (Ky. 1984). The state appellate court asserted that "[t]here is a right to be free of emotional distress arising from conduct by another." *Id*. To sustain a claim for intentional infliction of emotional distress, the plaintiff must prove (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was outrageous and intolerable such that it offends the generally accepted standards of decency and morality, (3) a causal connection between the wrongdoer's conduct and the plaintiff's injuries, and (4) severe emotional distress. *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2–3 (Ky. 1990). Because Barbee contests only the first and fourth elements of Dukes' intentional infliction of emotional distress claim, the Court will limit its analysis to those elements.

Regarding the first element, Kentucky courts have looked to the commentary on Restatement (Second) of Torts § 46 for guidance on when conduct is outrageous and intolerable. *Id*. at 789. Section 46 directs that liability attaches when the wrongdoer's "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt.d (1977).

For example, in *Wathen v. General Electric, Co.*, the plaintiff worked as a nurse for General Electric's Kentucky Glass Plant. 115 F.3d 400, 401 (1997). She alleged that the plant's upper-level management "subjected her to sexual jokes, comments, and innuendos." *Id*. at 402. The conduct alleged was "crude and offensive, and not to be tolerated in the workplace." *Id*. She asserted, among other claims, that the managers had engaged in intentional infliction of emotional distress. *Id*. at 403. The district court granted summary judgment on this claim. *Id*. On appeal, the Sixth Circuit affirmed the grant of summary judgment because the managers' conduct

was not outrageous and intolerable such that it gave rise to an intentional infliction of emotional distress claim. *Id*. at 407.

Concerning the fourth element of an intentional infliction of emotional distress claim— that the plaintiff suffers severe emotional distress—the plaintiff must suffer distress that is "substantially more than mere sorrow." *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). Emotional distress "includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises." *Kenney v. Arnold*, No 2006-CA-000302-MR, 2007 Ky. App. Unpub. LEXIS 1063, at *8 (Ky. Ct. App. Mar. 16, 2007) (citing Restatement (Second) of Torts § 46 cmt. j (1965)).

Here, Dukes states a plausible claim for intentional infliction of emotional distress. The factual allegations in the complaint indicate that Barbee's conduct was extreme and outrageous. Dukes claims that Barbee said something sexual in nature to her in "nearly every encounter with her." Compl. ¶ 17, ECF No. 1-1. For example, Barbee has "commented on her appearance, ogled her or propositioned her." *Id*. ¶ 19. Dukes additionally asserts that Barbee text messaged her that she had "sexy legs," became upset when she refused to share a hotel room with him, and offered to pay Dukes money to have sex with him six times a year. *Id*. ¶¶ 18, 20, 22. These allegations indicate that Barbee was acting far beyond the bounds of acceptable behavior. His conduct included more than "sexual jokes, comments, and innuendos," which appears to have been the only inappropriate behavior alleged in *Wathen*.

The factual allegations also suggest that Barbee's behavior caused Dukes to suffer severe emotional distress. She asserts that she declined further lucrative assignments with the MEAC because she did not feel comfortable working with Barbee. *Id*. ¶ 23. She also asserts that she

suffered "severe emotional distress." *Id*. ¶ 24. These factual allegations indicate that Barbee experienced more than "mere sorrow" as a result of Barbee's actions. Thus, Dukes has stated a plausible claim to relief for an intentional infliction of emotional distress, and the Court does not find a judgment on the pleadings appropriate for this claim.

V.      Conclusion

The Court will grant Barbee's motion for judgment on the pleadings on the claims for invasion of privacy (Count II) and negligence per se (Count IV). The Court will dismiss the claims for invasion of privacy and negligence per se with prejudice. In the alternative, the Court will grant the motion to dismiss the claims asserted against Barbee for lack of personal jurisdiction and will dismiss the claims without prejudice.

September 30, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**