UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALYCIA DUKES                                                                                          PLAINTIFF

v.                                                                                          NO. 3:16-cv-00303-CRS

MID-EASTERN ATHLETIC
CONFERENCE

And

DWIGHT BARBEE                                                                                     DEFENDANTS

Memorandum Opinion

I.   Introduction

This matter is before the Court on Defendant Mid-Eastern Athletic Conference's motion to dismiss Count I of the complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff Alycia Dukes filed a response in opposition, to which the Mid-Eastern Athletic Conference replied. For the reasons set forth below, the Court will deny the motion.

II.  Allegations in the Complaint

Defendant Mid-Eastern Athletic Conference (MEAC) hired Defendant Dwight Barbee as its Coordinator of Basketball Officials, a position that he held until he resigned in August 2015. Compl. ¶ 12, ECF No. 1-1. As Coordinator of Basketball Officials, Barbee performed several tasks for the MEAC, including assigning officials to the men's and women's basketball games in the conference, determining who could officiate for the conference and the conference tournament, and controlling how many games each official could officiate. *Id*. The complaint also states that Barbee "transacted business" with Plaintiff Alycia Dukes for his own benefit and the benefit of the MEAC. *Id*. ¶ 4.

Dukes allegedly began officiating MEAC women's basketball games on 2005. *Id*. ¶ 9. After she began working for the MEAC, she says she "repeatedly suffered unwelcome sexual advances" from Barbee. *Id*. ¶ 16. In "nearly every encounter with her," he said something related to sex. *Id*. ¶ 17. He "commented on her appearance, ogled her[,] or propositioned her." *Id*. ¶ 19. Dukes also claims that in March 2015, Barbee texted her and told her that she had "sexy legs." *Id*. ¶ 18. Also in 2015, Barbee allegedly requested that she drive him to and share a hotel for a basketball game that she had been assigned to officiate and that he had been assigned to observe. *Id*. ¶ 20. He became upset when she reserved separate hotel rooms for them and was overly critical of her officiating performance at the game. *Id*. The complaint also states that in April 2015, Barbee offered to pay Dukes $999.00 to have sex with him six times a year. *Id*. at ¶ 22. After Barbee's offer to pay Dukes for sexual encounters, she says that she declined further officiating assignments with the MEAC because she did not feel comfortable working with Barbee. *Id*. ¶ 23. She also claims that she suffered "severe emotional distress." *Id*. ¶ 24.

According to the complaint, other female officials complained that Barbee sexually harassed them and sexually discriminated against them. *Id*. ¶ 25. The MEAC reportedly did not provide a policy prohibiting sexual harassment, training on sexual harassment, or a procedure allowing people to complain of sexual harassment. *Id*. ¶ 15.

Dukes filed this action against the MEAC and Barbee in the Jefferson County, Kentucky Circuit Court. She asserts that the MEAC negligently supervised Barbee (Count I), that Barbee invaded her privacy (Count II), that Barbee engaged in intentional infliction of emotional distress (Count III), and that Barbee was negligent per se under an unspecified "Kentucky law or statute" (Count IV). She requests lost wages and benefits, compensatory damages, and punitive damages. Barbee filed an answer. The MEAC, with Barbee's consent, removed the action to this Court

based on diversity jurisdiction. The MEAC then filed a motion to dismiss the allegations against it under Federal Rule of Civil Procedure 12(b)(6).

III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 570 (2007). A complaint states a plausible claim for relief when the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept legal conclusions or "threadbare recitals of the elements of a cause of action." *Id*. When resolving a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (citing *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007)).

IV. Claim for Negligent Supervision (Count I)

Dukes asserts that the MEAC breached its duty to exercise reasonable care in the "hiring, retention, training or supervision" of Barbee and was "negligent and careless, or grossly negligent, or reckless" concerning Barbee's "retention, training or supervision" because the "MEAC knew or should have known that . . . Barbee had engaged — upon information and belief — in conduct similar [to] that in which Dukes was subjected as alleged herein and/or that he posed an unreasonable risk to females similarly situated, by reason of the MEAC's failure to adequately train and supervise Barbee." Compl. ¶ 27, ECF No. 1-1.

3

Under Kentucky law, an employer can be found liable for negligently supervising an employee. *Smith v. Isaacs*, 777 S.W.2d 912, 914 (Ky. 1989). To assert a claim of negligent supervision, the plaintiff must allege that "the defendant knew or had reason to know of the employee's harmful propensities; that the employee injured the plaintiff; and that the hiring, supervision, or retention of such an employee proximately caused the plaintiff's injuries." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005).

The MEAC argues that the complaint fails to state a claim for negligent supervision for which relief can be granted because Dukes does not plausibly allege that (1) Barbee was its employee, (2) Barbee committed a tort, and (3) it had any duty to protect her from sexual harassment from Barbee because he was not its employee.

IVA. <u>Lack of Employment Relationship</u>

The MEAC first maintains that Dukes fails to state a viable claim for negligent supervision because she does not plausibly allege that Barbee was its employee. MEAC's Mem. Supp. Mot. Dismiss 4, ECF No. 5-1. Kentucky law recognizes only an employer's liability for negligently supervising an employee; it does not recognize liability for negligently supervising an independent contractor. *See Griffin v. Southern Health Partners, Inc.*, No. 1:12CV-P174-M, 2013 U.S. Dist. LEXIS 83699, at *8 (W.D. Ky. June 13, 2013); *see also Turner v. Lewis*, 282 S.W.2d 624, 625 (Ky. 1955). Thus, under Kentucky law, "[t]he threshold issue of a negligent . . . supervision claim is whether the accused tortfeasor was actually an employee of the named defendant." *Southard v. Belanger*, 966 F. Supp. 2d 727, 744 (W.D. Ky. 2013) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998)).

The most important factor in determining whether a person is an employee or independent contractor is the right to control one's work and the way it is performed. *Turner*,

4

282 S.W.2d at 625. If the employer controls the work and the method of performance, then the person doing the work is an employee. *Id*. If the person doing the work controls the work and the method of performance, then he or she is an independent contractor, and a negligent supervision claim cannot be maintained. *Id*.

Here, Duke plausibly asserts that Barbee was an employee of the MEAC. Duke claims that Barbee "transacted business" on behalf of the MEAC and that the MEAC hired him as its Coordinator of Basketball Officials. Compl. ¶¶ 3, 9, ECF No. 1-1. She explains that Barbee performed many tasks for the MEAC, including determining "who could officiate for the Conference, how many games [the officials] received, where those games would be located, [and] who was selected to officiate in the conference tournament." *Id*. ¶ 12. Drawing all reasonable inferences in favor of Dukes, these allegations suggest that the MEAC controlled Barbee's work and the method of its performance, and thus that he was an employee. Because these factual allegations plausibly establish at this stage that Barbee was the MEAC's employee, this Court will deny the MEAC's motion to dismiss Dukes' negligent supervision claim on this first ground.

IVB. <u>Lack of Underlying Tortious Acts</u>

The MEAC secondly argues that Dukes fails to state a plausible claim for negligent supervision for which relief can be granted because she does not provide sufficient facts to show that Barbee committed the underlying torts alleged in the complaint, including invasion of privacy, negligence per se, and intentional infliction of emotional distress. MEAC's Mem. Supp. Mot. Dismiss 5, ECF No. 5-1.

> *i. Invasion of Privacy*

Dukes asserts that Barbee committed the tort of invasion of privacy because his behavior "constitute[d] [an] intrusion into [her] seclusion." Compl. ¶¶ 28–34, ECF No. 1-1. The MEAC argues that the complaint fails to assert a plausible claim for invasion of privacy because the factual allegations do not establish that Barbee engaged in an unreasonable intrusion or that Barbee intruded upon a matter to which Dukes had a reasonable expectation of privacy. MEAC's Mem. Supp. Mot. Dismiss 4–5, ECF No. 5-1.

There are four theories under which a plaintiff may recover for invasion of privacy under Kentucky law: (1) intrusion upon another person's seclusion, (2) appropriation of another person's name or likeness, (3) unreasonable publicity into another person's private life, and (4) publicity that places another person in false light. *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981) (citing Restatement (Second) of Torts §652A (1977)). The Kentucky Supreme Court has not yet explained the elements required to prove a claim of invasion of privacy based on intrusion upon another person's seclusion. *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 821 (W.D. Ky. 2003). The Western District of Kentucky predicted that the state's highest court would require a plaintiff to show "(1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private, (3) which is highly offensive to a reasonable person." *Id.* at 822.

A plaintiff cannot show that the defendant intruded into his or her private affairs for events that occurred while he or she appeared in public and expected to interact with others. *See Cheatham v. Paisano Publications*, 891 F. Supp. 381, 385 (W.D. Ky. 1995). In *Cheatham*, the plaintiff went to a bikers' festival. *Id*. at 384. She wore a pair of blue jeans from which she had cut out the backside, replacing it with fishnet fabric. *Id*. One of the defendants, a magazine,

6

published a photograph taken of the plaintiff's backside while she was at the festival. *Id*. at 384. The other defendant, a t-shirt manufacturer, then sold t-shirts with a similar likeness. *Id*. The plaintiff sued the defendants for, among other claims, invasion of privacy based on intrusion into her seclusion. *Id*. The court explained that because the plaintiff wore her unusual blue jean design at a large public event, she could have expected that people would photograph her. *Id*. at 385. Thus, "no reasonable jury could possibly conclude that [the magazine's] taking of these photos was an unreasonable intrusion upon her seclusion." *Id*.

Here, the complaint does not provide factual allegations that indicate that Barbee intruded upon Dukes' seclusion.[1] Dukes asserts that Barbee sent her two explicit text messages, including one in which he offered to pay her for sex. Compl. ¶¶ 18, 19, 22, ECF No. 1-1. From these allegations, it cannot be inferred that Barbee communicated with Dukes in a way that intentionally invaded her seclusion. It is not alleged that Dukes kept her phone number secret nor that Barbee purloined her phone number. Like the plaintiff in *Cheatham* who could expect to have her photograph taken while at a bikers' festival, Dukes thus could have expected at least the possibility that Barbee would use her phone number to send her text messages. Therefore, even if the content of the messages was distasteful, Barbee's sending the text messages did not intrude upon Dukes' seclusion.

   ii.   Negligence Per Se

Dukes claims that Barbee committed the tort of negligence per se because his actions an unnamed "violated Kentucky law or statute." Compl. ¶¶ 40–43, ECF No. 1-1. The MEAC argues

---

[1] Given Dukes' response to the MEAC's motion to dismiss, it appears that the claim for invasion of privacy is based solely on the text messages that Barbee sent Dukes. *See* Dukes' Resp. Mot. Dismiss 9, ECF No. 12 (asserting, "Dukes sufficiently pled that Barbee sent her sexually explicit text messages, including a text message that propositioned her for sex in exchange for money. The Court can infer from the content of these text messages and the manner in which they were sent was [sic] intentional and an intrusion into the private affairs of Dukes' sex life.").

that the complaint does not state a plausible negligence per se claim because it fails to identify the specific law that Barbee is alleged to have violated. MEAC's Mem. Supp. Mot. Dismiss 9, ECF No. 5-1.

Under Kentucky's negligence per se statute, a person who is "injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation." KRS § 446.070. To maintain a negligence per se claim, a plaintiff must show that (1) he is within the class of persons the statute is intended to protect and (2) the statute is "penal in nature and provides no civil remedy." *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005).

Dukes fails to state a plausible claim for relief for negligence per se. The complaint does not identify any Kentucky statute or law that Barbee allegedly violated. The complaint also fails to state whether Dukes is within the class of persons the unnamed Kentucky statute would be designed to protect. It is silent as to whether the statute would be penal in nature or whether it would provide for a civil remedy. Dukes identifies such a statute, Kentucky Revised Statute § 529.040, but only in her response. *See* Dukes' Resp. Mot. Dismiss 10, ECF No. 12. The inclusion of this statute in her response, however, does not remedy the deficiencies in her complaint regarding her negligence per se claim.

### iii. Intentional Infliction of Emotional Distress

Finally, Dukes claims that Barbee committed the tort of intentional infliction of emotional distress. Compl. ¶¶ 35–39, ECF No. 1-1. The MEAC maintains that the complaint does not state a viable claim for intentional infliction of emotional distress because the factual allegations do not support a finding that Barbee's conduct was outrageous or that Dukes suffered severe emotional distress. MEAC's Mem. Supp. Mot. Dismiss 6–8, ECF No. 5-1.

The Kentucky Supreme Court first recognized the tort of intentional infliction of emotional distress in *Craft v. Rice, Ky*. 671 S.W.2d 247, 251 (Ky. 1984). The state appellate court asserted that "[t]here is a right to be free of emotional distress arising from conduct by another." *Id*. To sustain a claim for intentional infliction of emotional distress, the plaintiff must prove (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was outrageous and intolerable such that it offends the generally accepted standards of decency and morality, (3) a causal connection between the wrongdoer's conduct and the plaintiff's injuries, and (4) severe emotional distress. *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2–3 (Ky. 1990). Because the MEAC contests only the first and fourth elements of Dukes' intentional infliction of emotional distress claim, the Court will limit its analysis to those elements.

Regarding the first element, Kentucky courts have looked to the commentary on Restatement (Second) of Torts § 46 for guidance on when conduct is outrageous and intolerable. *Id.* at 789. Section 46 directs that liability attaches when the wrongdoer's "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt.d (1977).

For example, in *Brewer v. Hillard*, Kenneth Hillard worked as a local deliveryman for Consolidated Freightways Corporation of Delaware. 15 S.W.3d 1, 4 (Ky. Ct. App. 1999). Hillard alleged that after he began working as a deliveryman, his supervisor, Jeff Brewer, called him sexually explicit names. *Id*. Brewer also grabbed Hillard's buttocks and asked him, "Why don't you give me some of that ass." *Id*. In addition, Brewer "rub[bed] his crotch while making lewd comments," and asked Hillard for oral and anal sex. *Id*. The Kentucky Court of Appeals denied Brewer's motion for summary judgment on Hillard's claim for intentional infliction of emotional

9

distress. *Id*. at 6. In denying the motion, the appellate court noted that Brewer's conduct was "outrageous and intolerable to the point of being actionable." *Id*.

Concerning the fourth element of an intentional infliction of emotional distress claim—that the plaintiff suffers severe emotional distress—the plaintiff must suffer distress that is "substantially more than mere sorrow." *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). Emotional distress "includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises." *Kenney v. Arnold*, No 2006-CA-000302-MR, 2007 Ky. App. Unpub. LEXIS 1063, at *8 (Ky. Ct. App. Mar. 16, 2007) (citing Restatement (Second) of Torts § 46 cmt. j (1965)).

Here, Dukes states a plausible claim for intentional infliction of emotional distress. The factual allegations in the complaint indicate that Barbee's conduct was extreme and outrageous. Dukes claims that Barbee said something sexual in nature to her in "nearly every encounter with her." Compl. ¶ 17, ECF No. 1-1. For example, Barbee "commented on her appearance, ogled her or propositioned her." *Id*. ¶ 19. Dukes additionally asserts that Barbee texted her that she had "sexy legs," became upset when she refused to share a hotel room with him, and offered to pay Dukes money to have sex with him six times a year. *Id*. ¶¶ 18, 20, 22. These allegations indicate that Barbee, like the defendant in *Hillard*, was acting far beyond the bounds of acceptable behavior.

The factual allegations also do not unreasonably claim that Barbee's conduct caused Dukes to suffer severe emotional distress. She asserts that she declined assignments with the MEAC because she did not feel comfortable working with Barbee. *Id*. ¶ 23. She also asserts that she suffered "severe emotional distress." *Id*. ¶ 24. These factual allegations indicate that Barbee

10

experienced more than "mere sorrow" as a result of Barbee's actions. Thus, Dukes has stated a plausible claim to relief for an intentional infliction of emotional distress.

Because Dukes states a plausible claim for intentional infliction of emotional distress, the Court will deny the MEAC's motion to dismiss Dukes' negligent supervision claim on this second ground.

    IVC.   Lack of Duty Owed by the MEAC to Dukes

The MEAC thirdly argues that Dukes fails to state a plausible claim to relief for negligent supervision because Dukes "cannot show that MEAC owed a legal duty to [her], a non-employee, to protect her from alleged sexual harassment by others." MEAC's Mem. Supp. Mot. Dismiss 9, ECF No. 5-1. That is, the MEAC cannot be held liable for "alleged 'sexual harassment'" by a "non-employee towards another non-employee." *Id.* at 11. The MEAC further asserts that "the Complaint apparently seeks to expand the Commonwealth's sexual harassment laws to permit a non-employee to sue an outside entity for sexual harassment." *Id*.

This argument appears to rely on the assertion that Barbee was not the MEAC's employee. As previously discussed, the complaint provides sufficient allegations to plausibly find that Barbee was an employee of the MEAC. Thus, the Court will deny the MEAC's motion to dismiss the negligent supervision claim on this third ground.

V.   Conclusion

The Court will deny the MEAC's motion to dismiss Count I of the complaint under Federal Rule of Civil Procedure 12(b)(6). The Court will refer the matter to the magistrate judge for scheduling.

September 30, 2016

Charles R. Simpson III, Senior Judge
United States District Court