UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ALYCIA DUKES                                                                                    Plaintiff

v.                                                              Civil Action No. 3:16-cv-00303-RGJ-RSE

MID-EASTERN ATHLETIC CONFERENCE                                                 Defendant

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 46]. A timely Response and Reply were filed. [DE 48; DE 50]. The Motion is now ripe for adjudication. Having considered the parties' filings and the applicable law, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### I.     BACKGROUND

Plaintiff, Alycia Dukes ("Dukes"), is a women's basketball official who began officiating games for Defendant, the Mid-Eastern Athletic Conference ("MEAC"), during the 2005–06 basketball season. [DE 1-1, Compl. at ¶ 9]. The MEAC is a non-profit, intercollegiate athletic conference whose members are twelve historically black colleges and universities located along the Atlantic coastline. [DE 6-2, Barbee Decl. at ¶ 3]. Dwight Barbee ("Barbee") served as supervisor of women's basketball officials for the MEAC between 2007 and 2015. [DE 46-8, Barbee Dep., Oct. 27, 2017, at 10:12–21]. The MEAC contends—and Barbee agrees—that he was an independent contractor and not an MEAC employee. [*Id.* at 10:2–10]. Similarly, Dukes has stated that she was an independent contractor with Barbee and not an employee of the MEAC. [DE 46-4, Pl.'s Dep., Aug. 9, 2017, at 122:23–123:3].

Dukes alleges that Barbee engaged in sexually inappropriate behavior on several occasions that caused her to suffer severe emotional distress. [DE 1-1, Compl. at ¶¶ 16–24; DE 48, Pl.'s Resp. Def.'s Mot. Summ. J. at 16]. For instance, Dukes testified that Barbee sent her a text message stating that she had "sexy legs." [DE 46-4, Pl.'s Dep., Aug. 9, 2017, at 158:18–21]. On another occasion, Barbee sent Dukes a text message stating that he was taking applications to be his mistress. [DE 46-4, Pl.'s Dep., Aug. 9, 2017, at 171:21–22]. Barbee did not deny sending the text but claimed that he was joking and not actually seeking someone to be his mistress. [DE 46-8, Barbee Dep., Oct. 27, 2017, at 41:10–17]. Dukes was nonetheless "shocked" by Barbee's conduct. [DE 46-4, Pl.'s Dep., Aug. 9, 2017, at 173:7].[1]

The Complaint initially named Barbee as an individual defendant in addition to the MEAC, but on September 30, 2016, this Court dismissed the claims against Barbee without prejudice for lack of personal jurisdiction. [DE 17, Order at 1]. In that same Order, the Court dismissed with prejudice Dukes's claims of invasion of privacy and negligence *per se*. [*Id.*]. The only remaining claim is one of negligent supervision asserted against the MEAC. Dukes argues that the MEAC knew of or should have known that Barbee might pose a risk of outrageous behavior, and the harm resulting from that behavior was caused by the MEAC's failure to adequately supervise Barbee. [DE 1-1, Compl. at ¶¶ 26–28]. As a threshold matter, however, the parties dispute the law that should govern this action—specifically, whether Virginia or Kentucky substantive law applies.

## II. LEGAL STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and demonstrating the absence of a

---

[1] Despite feeling shocked, Dukes never sought treatment for any distress she suffered as a result of Barbee's conduct. [DE 46-5, Pl.'s Resps. Def.'s First Set Interrogs. at ¶ 9].

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts demonstrating a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence… of a genuine dispute[.]" *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

### III.    DISCUSSION

#### A.    Choice of Law

In diversity actions, "federal courts apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 417 (1996). "When a conflict of law arises

during such an action, 'the choice-of-law rules of the forum state' govern." *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014) (quoting *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000)). A federal court sitting in diversity resolves conflicts of law by applying the choice-of-law rules of the state in which the court sits. *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)).

Kentucky courts "are very egocentric or protective concerning choice of law questions." *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. App. 1987), *overruled on other grounds by Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994). That is, there is a strong preference in Kentucky for applying Kentucky law. *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 707 (W.D. Ky. 2013). The Sixth Circuit has routinely recognized this "provincial tendency" when applying Kentucky's choice-of-law rules. *Id.*; *see also Wallace Hardware*, 223 F.3d at 391 ("On at least two occasions, we likewise have noted this provincial tendency in Kentucky choice-of-law rules."); *Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230 (6th Cir. 1997) (noting that "Kentucky does take the position that when a Kentucky court has jurisdiction over the parties, '[the court's] primary responsibility is to follow its own substantive law.'" (alteration in original) (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972))); *Johnson v. S.O.S. Transp., Inc.*, 926 F.2d 516, 519 n. 6 (6th Cir. 1991) ("Kentucky's conflict of law rules favor the application of its own law whenever it can be justified."); *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law *whenever possible* . . . [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary." (discussing *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982))). As a result, this Court must apply Kentucky's choice-of-law rules.

Kentucky law applies different tests to choice-of-law issues depending on whether the underlying action sounds in tort or contract. *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). For claims sounding in contract, Kentucky applies the "most significant relationship" test articulated in the Restatement (Second) of Conflict of Laws § 188 (Am. Law Inst. 1977) to resolve choice-of-law disputes. *See Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581–82 (Ky. 1977); *Wells Fargo Fin. Leasing, Inc.*, 970 F. Supp. 2d at 707. But for claims sounding in tort, "any significant contact" with Kentucky calls for the application of Kentucky law. *See Sutton v. Hous. Auth. of Hickman, Kentucky*, No. 514CV00161, 2016 WL 6836943, at *2 (W.D. Ky. Nov. 18, 2016); *Leggett*, 484 S.W.2d at 829; *Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 n.8 (W.D. Ky. 2003). Though the precise determinants of the "any significant contact" test are fact dependent, a Kentucky court's primary responsibility is to apply the laws of the Commonwealth. *See Leggett*, 484 S.W.2d at 830 ("The basic law is the law of the forum, which should not be displaced without valid reasons."). Kentucky law is particularly hesitant to apply the laws of other jurisdictions when those laws might fundamentally alter substantive rights for the parties over whom Kentucky is exercising jurisdiction. "Laws unique to other jurisdictions . . . should not bind and define the public policy of Kentucky." *U.S. Fid. & Guar. Co. v. Preston*, 26 S.W.3d 145, 147–48 (Ky. 2000).

Several cases demonstrate the dual themes of upholding the responsibility of applying Kentucky law while avoiding results inconsistent with Kentucky's public policy. In *Reichwein v. Jackson Purchase Energy Corp.*, a widow sued individually, on behalf of her deceased husband's estate, and on behalf of her daughter, after a transformer crushed her husband to death while he was temporarily working in Kentucky following a catastrophic ice storm in 2009. 397 S.W.3d 413, 414 (Ky. App. 2012). The widow and her husband resided in Minnesota. *Id.* The plaintiff

argued that Minnesota law should govern the dispute because her husband was a Minnesota worker who had entered into a contract in Minnesota with a Minnesota company. *Id.* at 416. This choice-of-law determination was significant because Minnesota law permitted the recovery of parental consortium, while Kentucky's workers' compensation law barred such claims. *Id.* at 415. Citing its responsibility to apply Kentucky's substantive law, the Kentucky Court of Appeals held that the fact the accident occurred in Kentucky was sufficient to satisfy the "any significant contacts" test. *Id.* at 416; *see also Petronis v. Churchill Downs, Inc.*, No. 2005-CA-001925-MR, 2007 WL 1520018, *2–3 (Ky. App. 2007) (holding that the personal injury claim of a New York resident whose employment contract was entered into in New York and covered by New York's workers' compensation law was subject to Kentucky law because the injury occurred in Kentucky).

While location of the injury is important, it is not determinative. For example, *Foster v. Leggett* concerned a car accident where the guest passenger died. 484 S.W.2d at 827. As a defense, the driver pleaded Ohio's guest statute, requiring willful or wanton misconduct by the driver to recover damages. *Id.* at 827–28. Although the accident occurred in Ohio and the driver resided in Ohio, the Kentucky Supreme Court held that the victim's Kentucky residency, combined with the driver's social connections and occupation in Kentucky, permitted the application of Kentucky law. *Id.* at 829. Thus, Kentucky courts have liberally construed the "any significant contacts" standard in order to further the policies of favoring Kentucky law and avoiding inconsistent results within the Commonwealth.

Here, the MEAC argues that it has no significant contacts with Kentucky. [DE 46-1 at 10–11]. But Kentucky law is clear that the residency of a given party is not dispositive. *See Reichwein*, 397 S.W.3d at 816. The MEAC further contends that none of the events giving rise to the claim occurred in Kentucky. [DE 46-1 at 10]. The record does not conclusively prove this point. While

6

Dukes does not allege a specific instance of receiving an inappropriate comment, text message, or other communication from Barbee while within the borders of Kentucky, neither has the MEAC identified an instance where Dukes claims that all the alleged behavior occurred outside the Commonwealth.

Moreover, Plaintiff testified that she showed some of the offending text messages to her husband. [DE 46-4, Pl.'s Dep. 162:17–19]. Dukes does not claim that she showed her husband the messages at their home in Jefferson County, Kentucky, but viewing the comment in the light most favorable to Dukes supports such an inference. More importantly, when exercising proper jurisdiction over parties, the location of the tort is no more dispositive of which law applies in Kentucky than is the residency of a party. *See Leggett*, 484 S.W.2d at 829; *Wessling v. Paris*, 417 S.W.2d 259, 260–61 (Ky. 1967).

As the MEAC notes, applying Virginia law would result in dismissal of Dukes's negligent supervision claim because Virginia law does not recognize this tort. [DE 46-1 at 11 (citing *Jones v. Kroger Ltd. P'ship I*, 80 F. Supp. 3d 709, 714 (W.D. Va. 2015))]. As discussed above, the denial to a Kentucky resident of protections afforded by Kentucky law has been a recurring factor influencing how courts' resolve conflicts of laws. *Preston*, 26 S.W.3d at 147. Kentucky's policy toward applying the law of the forum while avoiding inconsistent outcomes, bolstered by the Dukes's Kentucky residency, would thus lead a Kentucky court to apply Kentucky law in this case. Accordingly, the Court will consider the merits of Plaintiff's negligent supervision claim.

**B.      Negligent Supervision**

"Kentucky law recognizes that an employer can be held liable for the negligent supervision of its employees." *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003) (citing *Smith v. Isaacs*, 777 S.W.2d 912 (Ky. 1989)). "To assert a claim of negligent supervision, the plaintiff

7

must allege that 'the defendant knew or had reason to know of the employee's harmful propensities; that the employee injured the plaintiff; and that the hiring, supervision, or retention of such an employee proximately caused the plaintiff's injuries.'" *Dukes v. Mid-Eastern Athletic Conference*, 213 F. Supp. 3d 887, 890–91 (W.D. Ky. 2016) (quoting *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005)). The law recognizes only the failure of an employer to supervise an employee, not failure to supervise an independent contractor. *Id.* at 891. "Thus, under Kentucky law, the threshold issue of a negligent supervision claim is whether the accused tortfeasor was actually an employee of the named defendant."[2] *Id.* (alteration, citation, and quotation omitted).

"The most important factor in determining whether a person is an employee or independent contractor is the right to control one's work and the way it is performed." *Id.* (citing *Turner v. Lewis*, 282 S.W.2d 624, 625 (Ky. 1955)). As the Kentucky Supreme Court has explained:

> If the employer retains the right to control the work and the manner in which it is done, those doing the work are [employees]. On the other hand, if an employee has the right to control the manner of work and the right to determine the means by which results are accomplished, he is deemed an independent contractor . . .

*Turner*, 282 S.W.2d at 625.

In this case, the MEAC argues that Barbee was an independent contractor, so the MEAC cannot be liable for Barbee's alleged conduct. [DE 46-1 at 11–13]. Dukes has not produced evidence sufficient to demonstrate a genuine issue of material fact regarding Barbee's independent contractor status. Barbee stated that his job was "to run the women's basketball program." [DE

---

[2] Both Dukes and the MEAC have briefed this issue with a focus on applying the nine-factor test set out in *Ratliff v. Redmon*, 396 S.W.2d 320 (Ky. 1965). But this test is specifically limited to claims for workers' compensation, and its purpose is to expand the common law definition of an employee in order to protect a broader class of injured workers. *Purchase Transp. Servs. v. Estate of Wilson*, 39 S.W.3d 816, 818 (Ky. 2001). Because this is not a workers' compensation claim, the Court will apply the common law test rather than performing a factor-by-factor analysis. However, even under the factor-by-factor analysis, Dukes fails to show that Barbee was an employee rather than an independent contractor for the reasons discussed above.

8

48-3, Barbee Dep. at 10:23–11:1]. Part of these responsibilities included supervising approximately seventy to seventy-five women's basketball officials. [*Id.* at 11:2–9]. Barbee based his work out of North Carolina, while the MEAC was located in Virginia. [DE 6-2, Barbee Decl. at ¶¶ 1, 3]. Further, Barbee used his personal cell phone to contact potential officials; the MEAC did not issue Barbee a business phone; and the MEAC did not require that Barbee forward any communications regarding his organizing of officials to the Conference. [DE 46-8, Barbee Dep. at 17:2–19]. Dukes contends that the MEAC had the actual right to control interactions between coordinators and officials, but her arguments are unavailing. First, Duke states without citation that coordinators such as Barbee are listed on the MEAC's website as members of the staff. [DE 48 at 8]. But by Duke's own admission, Kentucky law is concerned with the exercise of control, not job titles. *Id.* at 6. Plaintiff has cited no authority that calling an individual a staff member on a website alters his substantive legal status.

Next, Dukes states, again without citation, that basketball coordinators are listed on the MEAC's website with phone extensions and some with email addresses. *Id.* at 8. But Dukes has not identified a phone extension or an email address for Barbee. Dukes further states that Barbee was an employee because his work was governed by the MEAC's policy handbook. *Id.* Here again, Dukes fails to state which policy affected whether Barbee or the MEAC controlled how Barbee conducted his job duties. Asking someone to act professionally and not sexually harass others does neither bears on how an independent contractor goes about providing officials for basketball games, nor does it speak to any level of control over the actual duties of the work.

Dukes further claims that the MEAC exercised control of Barbee's job duties by renting arenas for basketball games and building the conference tournament schedule. [DE 48 at 9]. But pointing out what Barbee did not control does not diminish the control he exercised over his actual

9

job duties. Barbee's job was to provide a certain number of officials at a certain number of basketball games each season, not to rent arenas or schedule conference tournaments. [DE 46-1 at 13].

Finally, Dukes argues that Barbee was the MEAC's employee because he made use of Arbiter, an online system to facilitate communications between assigners and officials. [DE 48 at 9]. But at her own deposition, Dukes stated that not all assigners rely on Arbiter, and it is up to the individual coordinator to decide which scheduling system they will use. [DE 48-1 at 147:13–148:4]. Dukes has provided no evidence contrary to her own testimony regarding assigners' use of Arbiter and control over scheduling. As a result, the fact that Barbee was free to choose which scheduling system he employed weighs in favor of finding that he was an independent contractor. Dukes testified that she has an account with RefPay and has received payments from numerous schools and conferences in addition to the MEAC. [DE 48-1 at 67:1–12]. Duke's attempted reliance on her own use of Refpay, a system that the MEAC and other conferences use to pay officials, has no bearing on Barbee's independent contractor status. [DE 48 at 9]. Thus, to the extent Dukes is attempting to argue that Arbiter and RefPay constituted instrumentalities provided by the MEAC, there is no evidence to support her argument.

Dukes has thus failed to present any evidence demonstrating that Barbee was an employee. As a result, her claim for negligent supervision must fail as a matter of law. *Carneyhan*, 169 S.W.3d at 844.[3]

---

[3] Because Barbee has been dismissed as a defendant, there is no need to consider the merits of Dukes's intentional infliction of emotional distress claim.

## IV.   CONCLUSION

For the foregoing reasons, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** that Defendant's Motion for Summary Judgment [DE 46] is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**.  This is a final and appealable order.

cc:    counsel of record